J. W. KENNEDY, Appellant, v. MONARCH MANUFACTURING
COMPANY AND J. G. JORDAN.

Contracts: CORPORATION: SPECIFIC PERFORMANCE. In an action
1   for specific performance of a contract which provided that
    plaintiff should be given a permanent proxy to vote certain
    shares of corporate stock, it is held that enforcement must be
    denied because not properly executed, for want of proper par-
    ties to the suit, and for the reason that a provision to trans-
    fer one-half share to one to be agreed upon cannot be speci-
    fically enforced.

Contracts: RESCISSION. A contract of lease of property to a cor-
2   poration cannot be rescinded because of a refusal of certain
    stockholders to issue proxies to the lessor, the corporation not
    being a party to the agreement.

*Appeal from Polk District Court.*—HON. A. H. McVEY,
Judge.

MONDAY, MARCH 14, 1904.

ACTION to enforce specific performance of an agreement
among the stockholders to give to one of them a permanent
proxy to vote a certain proportion of corporate stock. Plain-.
tiff also asked that, if such relief could not be given, a cer-
tain contract entered into between him and the corporation
should be rescinded, and the amount invested by him in the

stock of the corporation should be returned. Decree for defendants, from which plaintiff appeals.—*Affirmed.*

*Dale & Harvison* for appellant.

*Dowell & Parrish* for appellees.

McCLAIN, J.—In January, 1899, the defendant the Monarch Manufacturing Company was incorporated, and in July, 1900, two hundred twenty shares of capital stock had been issued, of which shares one hundred and seventy were owned by defendant J. G. Jordan and the remaining fifty shares by one John D. Jordan. At this time a contract was entered into, the terms of which will hereafter be more specifically set out, by which it was agreed between defendant J. G. Jordan and this plaintiff that plaintiff should lease certain property to the corporation, and should pay into the capital stock of the corporation $5,000, for which he should receive from the corporation thirty shares of stock and from said Jordan seventy shares of stock, and that plaintiff should be given a permanent proxy by said J. G. Jordan and John D. Jordan so that his voting power should be equal with their voting power. The corporation took possession of the leased property, and plaintiff paid into the capital stock $5,000, partly by cash and partly by note; the note, so far as it remains unpaid, being still held by the corporation. No proxy was ever given to plaintiff, but in August following J. G. Jordan was elected president and plaintiff was elected secretary and treasurer of the corporation, and they severally continued to fill said offices until after the commencement of this action in August, 1901. A short time prior to the commencement of the action, at a special meeting of the stockholders, called for the purpose of electing a board of directors, at which J. G. Jordan and plaintiff were present, one Hooper appeared, claiming to be the owner of the fifty shares of stock which had belonged to John D. Jordan, and at this time plaintiff, as secretary, denied the right of said Hooper to vote said stock, and demanded the execution of the permanent proxy referred

to in the contract. Thereupon plaintiff commenced this action against the corporation and J. G. Jordan, John D. Jordan, and said Hooper, as defendants, to compel the specific performance of the agreement as to a permanent proxy, and also asked that the defendants other than the corporation be enjoined from voting shares of stock which plaintiff was entitled to vote at such official meeting. A preliminary injunction was granted, but on a subsequent motion was dissolved, and plaintiff then dismissed his case as to Hooper and John D. Jordan, and by amended and substituted petition asked that, if performance of the contract as to permanent proxy could not be granted as against defendant J. G. Jordan, then a decree should be rendered rescinding the contract; and that an accounting be granted, in which plaintiff should have credit for all sums paid by him to the corporation, with interest, etc.

We can indicate our conclusions as to the correctness of the decree which denied plaintiff any relief without going into detail as to the evidence introduced on the hearing. 1. CONTRACTS corporations: specific performance. Counsel have argued quite fully the question whether plaintiff is entitled to specific performance of the contract for a permanent proxy, and as involved in that question the validity of a contract among stockholders by which one of them becomes permanently entitled to representation by voting a larger amount of stock than he owns; but, in view of the conclusion reached as to the construction of the contract, it is not necessary to discuss this question. The contract was signed by plaintiff and J. G. Jordan, and it is argued that it was acquiesced in by John D. Jordan and by the defendant company as represented by its directors at a directors' meeting, the directors being the owners of the entire stock of the corporation. The clause of the contract relating to a proxy is as follows. "It is further agreed by the parties hereto that J. G. Jordan shall be made president, John D. Jordan, vice-president, and J. W. Kennedy, secretary and treasurer of said company, and that the said Kennedy shall be given a permanent proxy by the

said J. D. and J. G. Jordan, so that his voting power shall be equal with their voting power. It is further agreed by the said Kennedy and said J. G. Jordan that one-half share each of the capital stock of said company shall be placed in the hands of some friend as may be agreed upon, in order to permit such person to vote the same in the event that a disagreement occurs at any time between said parties." There are several practical difficulties in the way of a specific enforcement of this agreement. It purports to bind John D. and J. G. Jordan on the one hand, but is signed by J. G. Jordan only, and John D. Jordan is not now a party to this suit; nor is Hooper, who appears to claim to be the assignee of the stock, now a party to the suit; so that even if it should be conceded that John D. Jordan was bound by acquiescence in the contract, and Hooper took his stock by assignment subject to the obligation of this contract, still the contract could not be equitably enforced against J. G. Jordan alone. Furthermore, the contract provides for the transfer by plaintiff and J. G. Jordan of a one-half share each to some friend who may be agreed upon, in order to permit such person to vote one share in the event that a disagreement occurs between plaintiff and J. G. Jordan. It is plain that this provision of the contract, which is essential to the carrying out of its provisions in the accomplishment of the purpose intended, cannot be specifically enforced. How can a court compel the parties to agree as to a person who shall practically arbitrate their differences? That such an agreement cannot be enforced, see *Greason v. Keteltas,* 17 N. Y. 491; *Hopkins v. Gilman,* 22 Wis. 476; *Milnes v. Gerg,* 14 Vesey, Ch. 400.

Counsel for appellant especially rely, however, on the claim that he is entitled to a rescission, the ground for rescission being that the agreement by which he leased his prop-

2. CONTRACTS: rescission.

erty to the corporation and acquired stock therein, paying the consideration of such stock into the capital of the company, has not been carried out, or could not be carried out. There are several reasons why plaintiff is not entitled to this relief, one of which, we think,

is sufficient without the statement of others; that is, that, so far as the corporation is concerned, it is not bound nor affected by any agreement among the stockholders as to how the corporation shall be managed, nor who shall be entitled to vote the shares of stock. While the interest of the stockholders and those of the corporation may be in some respects the same, yet theoretically and practically the corporation and its stockholders are distinct. So far as the rights of the corporation are involved, it is in the situation of having received, as a part of its capital stock, a fund paid in on an adequate consideration by the plaintiff, and accepted the lease of premises for a good consideration, which it is now occupying. Why should the corporation be compelled to refund the money received, make an accounting as to its business, and surrender the leased property for failure of J. G. Jordan to perform a personal obligation entered into with plaintiff? In our view, the stipulations between plaintiff and J. G. Jordan as to a permanent proxy and the appointment of an arbitrator, do not concern the corporation in any way, and we reach the conclusion that no ground of rescission as against the corporation is shown. Of course, the plaintiff cannot have the relief asked with reference to the rescission and accounting against J. G. Jordan alone, as it is not within his power as an individual stockholder to surrender the lease made to the corporation, nor make an accounting for the corporation.

These conclusions relieve us from the consideration of many questions elaborately discussed by counsel on either side, and lead to the result that the decree of the lower court denying relief to plaintiff is AFFIRMED.